to abide event," and inserting the words, "upon payment of plaintiff's costs and disbursements of the trial," and as modified affirmed, without costs of this appeal to either party.

(69 App. Div. 85.)

### STEINLE v. METROPOLITAN ST. RY. CO.

(Supreme Court, Appellate Division, First Department. February 7, 1902.)

STREET RAILWAY—INJURY TO PASSENGER—DISMISSAL OF COMPLAINT. .

> In a suit by a passenger against a street railway company for personal injuries, where plaintiff testified that the car came to a stop, and that while he was attempting to alight it started, suddenly throwing him to the ground, it was error to dismiss the complaint, notwithstanding that five of defendant's employés and three apparently disinterested passengers testified that he attempted to alight before the car came to a stop, the case being for the jury.

Appeal from trial term.

Action by Edmund Steinle against the Metropolitan Street Railway Company. Judgment dismissing the complaint, and plaintiff appeals. Reversed.

Argued before VAN BRUNT, P. J., and HATCH, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

William P. Burr, for appellant.

Henry A. Robinson, for respondent.

INGRAHAM, J. This action was brought to recover for personal injuries. The plaintiff testified that he was a passenger on one of the defendant's cars going uptown upon Seventh avenue; that when the car got to Forty-Eighth street he gave a sign to the conductor to stop; that the car came to a stop, and the plaintiff got up to alight; that as he attempted to get off the car the conductor gave a sign, the car started, gave a sudden jerk, and threw him to the ground. On behalf of the defendant, the driver testified that upon approaching Forty-Eighth street he received a signal to stop the car; that he stopped as soon as he could, and then looked around, and saw the plaintiff on the ground in the street. The conductor of the car testified that as the car approached Forty-Eighth street the plaintiff made a signal to stop the car; that the car stopped at Forty-Eighth street at the upper crossing; that before the car stopped the plaintiff got up, stepped on the running board, and while the car was yet in motion stepped down, holding on with his left hand; that the car ran about five feet, the plaintiff still holding on to the car, and the car pulled him over on his back. Another employé of the defendant, who was riding on the front platform of the car, testified that the plaintiff was lying in the street before the car stopped. Another employé of the defendant, who was riding upon this car, testified that he saw the plaintiff get up and motion to the conductor to stop; then get down on the running board of the car, having a demijohn in one hand, and hanging on to the upright stanchion with the other, and from that position he stepped off before the car came to a stop. A gripman of one of the Broadway cars, which followed the car upon

which the plaintiff was riding, testified that he saw the plaintiff on the running board, and that before the car came to a stop he stepped off the car, and was dragged for a couple of feet, and then fell on his back. A passenger upon the car testified that she saw the plaintiff attempt to alight, and that the car was moving; that it had not had a chance to stop. Another passenger upon the car testified that she saw the plaintiff attempt to leave the car, that the man jumped off before the car stopped, and then the car stood still. Another passenger upon the car testified that he saw the plaintiff get off the wrong side of the car, while the car was in motion; that the car stopped immediately after the plaintiff had fallen. Several of these witnesses appear to have been disinterested, and they unite in testifying that the plaintiff attempted to alight before the car came to a stop. In opposition to all this testin. ay, we have the evidence of the plaintiff, uncorroborated, that the car stopped first. There can be no question but that the fact upon which the plaintiff must rely, namely, that the car had stopped before he attempted to get off, was contradicted by a large preponderance of evidence, the evidence that the car had stopped before he attempted to get off being his own uncorroborated testimony, and this is met by the testimony of eight witnesses, three of whom appear to have been disinterested, they not being, and never having been, in the employ of the defendant; and it is not probable that a jury, in the face of this evidence, would find a verdict for the plaintiff. There was, however, some evidence (the testimony of the plaintiff) of the fact that would make the defendant liable, and, that being so, under the rule as now established in this state the plaintiff had the right to have the case submitted to the jury. McDonald v. Railway Co., 167 N. Y. 66, 60 N. E. 282. If, notwithstanding this preponderance of evidence, the jury should find a verdict for the plaintiff, it would then be the duty of the court to determine whether or not the evidence so greatly preponderated as to require that the verdict should be set aside as against the weight of evidence; but, in the first instance, as we understand the rule now established, no matter how strong the evidence preponderates, the court must submit the question to the jury.

It follows that the judgment appealed from must be reversed, and a new trial ordered, with costs to the appellant to abide the event.

VAN BRUNT, P. J., and PATTERSON and LAUGHLIN, JJ., concur. HATCH, J., concurs in result.